UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVE S. JABAR,

                           Plaintiff,

              v.

U.S. DEPARTMENT OF HOMELAND SECURITY
  TRANSPORTATION SECURITY ADMINISTRATION,

                         Defendant.
_____

REPORT
and
RECOMMENDATION

17-CV-00276S(F)

APPEARANCES:      STEVE S. JABAR, *Pro se*
                       57 Birkdale
                       Cheektowaga, New York  14225

                       JAMES P. KENNEDY
                       UNITED STATES ATTORNEY
                       Attorney for Defendant
                       MICHAEL S. CERRONE
                       Assistant United States Attorney, of Counsel
                       Federal Centre
                       138 Delaware Avenue
                       Buffalo, New York  14202

## **JURISDICTION**

This case was referred to the undersigned by Honorable Lawrence J. Vilardo on

November 17, 2017, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  On February 14, 2020, the matter was

reassigned to Honorable John L. Sinatra, Jr. (Dkt. 31).  The matter is presently before

the court on motions for summary judgment filed by Defendant on September 27, 2018

(Dkt. 13), and by Plaintiff on December 20, 2018 (Dkt. 22).

## BACKGROUND

Plaintiff Steve S. Jabar ("Plaintiff"), proceeding *pro se*, commenced this action

pursuant to the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552 *et seq.*,

on March 29, 2017, challenging the failure of Defendant United States Department of

Homeland Security ("DHS") Transportation Security Administration ("Defendant" or

"TSA"), to provide Plaintiff with responses to all of Plaintiff's requests for information

pertaining to difficulties Plaintiff encountered on three separate occasions upon

attempting to re-enter the United States after traveling to the Middle East.  As relevant,

a Scheduling Order filed January 4, 2018 (Dkt. 10) set as deadlines August 31, 2018 for

Defendant to file its *Vaughn* index,[1] and September 28, 2018 for parties to file

dispositive motions.  Accordingly, on August 29, 2018, Defendant filed two *Vaughn*

indices as Exhibits G and J to the Declaration of Teri M. Miller (Dkt. 17).

On September 27, 2018, Defendant moved for summary judgment (Dkt. 13)

("Defendant's Motion"), filing in support the Memorandum of Law (Dkt. 14) ("Defendant's

Memorandum"), the Statement of Undisputed Facts (Dkt. 15) ("Defendant's Statement

of Facts"), the Declaration of Douglas E. Blair (Dkt. 16) ("Blair Declaration"), and the

Declaration of Teri M. Miller (Dkt. 17) ("Miller Declaration"), attaching exhibits A through

J ("Defendant's Exh(s). __").  On December 20, 2018, Plaintiff filed his motion for

summary judgment (Dkt. 22) ("Plaintiff's Motion"), attaching the Memorandum of Law in

Support of Motion for Summary Judgment (Dkt. 22-1) ("Plaintiff's Memorandum"), and

---

[1] The so-called "*Vaughn* index," refers to an index prepared by the agency upon whom a FOIA request is made setting forth all materials otherwise responsive to the FOIA request but which the agency withholds as exempt as well as the exemptions asserted as justifying the withholdings.  *See Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977 (1974) (requiring government agency, in responding to FOIA request, prepare a list of documents withheld as exempt, either in full or in part, and furnish detailed justification for the asserted exemptions).

also filed Plaintiff's Statement of Material Undisputed Facts and Response to Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56 (Dkt. 23) ("Plaintiff's Statement of Facts").  On March 28, 2019, Defendant filed a Memorandum of Law in further support of Defendant's Motion and in opposition to Plaintiff's Motion (Dkt. 29) ("Defendant's Reply"), and Defendant's Response to Statement of Undisputed Facts (Dkt. 30) ("Defendant's Response to Plaintiff's Statement of Facts").  Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion should be DENIED in part and GRANTED in part; Plaintiff's Motion should be DENIED.

## FACTS[2]

Plaintiff Steve S. Jabar ("Plaintiff" or "Jabar"), an American citizen and native of Iraq, traveled to the Middle East, returning by flights landing at John F. Kennedy Airport ("JFK") in New York City, New York.  On three occasions, including January 4, 2008, December 2, 2011, and March 23, 2012, upon returning to the United States at JFK, Plaintiff also was required to present for additional security screening when clearing United States Customs and Border Protection.  In particular, Plaintiff was escorted from the airplane to DHS secondary screening where he was detained for hours while his luggage was searched.  Plaintiff also maintains he repeatedly has been subjected to additional security scrutiny when going through airport security including having to report to the airline ticket counter because he is unable to print his boarding passes from an airport kiosk or from home, and a ticket agent advised Plaintiff is on a Federal

---

[2] Taken from the pleadings and motion papers filed in this action.

Government Watch List and took Plaintiff's identification and checked with another party prior to handing Plaintiff his boarding pass.  DHS Traveler Inquiry Form ("DHS TIF")[3] (*see* 49 C,F,R, § 1560.205(b) (establishing DHS TIF as the form for initiating redress process where a traveler believes he has been improperly or unfairly treated in connection with screening through airport security or boarding aircraft)).

By letter to TSA dated November 1, 2016 ("November 1, 2016 Letter")[4] Plaintiff's then attorney Michael Kuzma, Esq. ("Kuzma"),[5] requested pursuant to FOIA and regulations promulgated thereunder "a complete and thorough search of all filing systems and locations for all records maintained by [TSA] pertaining to [Plaintiff] . . . for the years 2002 to the present."  November 1, 2016 Letter at 1.  By letter to Kuzma dated November 17, 2016 ("November 17, 2016 Letter"),[6] the TSA FOIA Branch ("FOIA Branch") acknowledged receipt of the November 1, 2016 Letter, but advised Plaintiff's FOIA request was too broad in scope because it did not specifically identify the records requested, informing Plaintiff had 30 days to resubmit his FOIA request reasonably describing the records sought, and assigned "unperfected reference number" 2017-0471 ("FOIA Request").  Accordingly, by letter to FOIA Branch dated December 9, 2016 ("December 9, 2016 Letter"),[7] Kuzma specified the FOIA request sought a search of the "No-Fly" and "Selectee" Lists, and DHS/TSA-001 Transportation Security Enforcement Record System ("TSERS"), and DHS/TSA-002 Transportation Security Administration 001, Transportation Security Intelligence System ("TSIS") Operations Files.  December

---

[3] Defendant's Exh. F (Dkt. 17 at 43-46).
[4] Defendant's Exh. A (Dkt. 17 at 14-18).
[5] Although Kuzma represented Plaintiff throughout the administrative proceedings, Kuzma has not appeared in this action on Plaintiff's behalf.
[6] Defendant's Exh. B (Dkt. 17 at 19-21).
[7] Defendant's Exh. C (Dkt. 17 at 22-24).

9, 2016 Letter at 1.  Kuzma further identified records under the FOIA request included records concerning Plaintiff's inquiry made pursuant to DHS Traveler Redress Inquiry Program ("DHS TRIP") and assigned Redress Control Number 2042441 ("RCN 2042441") as well as all records generated by TSA

- regarding Plaintiff's interaction with TSA personnel at JFK when Plaintiff returned on a March 23, 2012 flight from Cairo, Egypt

- in response to the Plaintiff's February 29, 2012 TIF

- regarding Plaintiff's interaction on December 2, 2011 with TSA personnel upon disembarking at JFK from Egypt Air Flight # 985

- regarding Plaintiff's September 11, 2008 inquiry TSA received from U.S. Senator Charles E. Schumer ("Sen. Schumer's Letter"), and

- concerning Plaintiff's January 4, 2008 interaction with TSA personnel at JFK upon disembarking from a flight originating in Amman, Jordan.

TSA received the December 9, 2016 Letter in the TSA FOIA Branch on December 27, 2016, and by letter dated December 28, 2016 ("December 28, 2016 Letter"),[8] advised Kuzma the additional information provided was sufficient to perfect Plaintiff's FOIA's request.  Defendant, through the FOIA Branch, then directed several searches of relevant data bases for records responsive to Plaintiff's FOIA request.

Specifically, on December 28, 2016, the FOIA Branch directed a search by TSA operations at JFK and at TSA's Transportation Security Redress Branch ("TSRB"), charged with administering DHS TRIP in searching for records responsive to FOIA requests.  TSRB searched the Redress Management System ("RMS"), a DHS TRIP information system where information pertaining to redress inquiries is maintained, locating 40 pages of responsive records ("RMS Records") regarding RCN 2042441 and

---

[8] Defendant's Exh. D (Dkt. 17 at 25-26).

the February 29, 2012 DHS TIF.  TSRB delivered the RMS Records to the FOIA Branch which forwarded the RMS Records to the Sensitive Security Information ("SSI") Program ("SSI Program"), for review including identifying and redacting SSI.  After the SSI Program identified and redacted SSI, the FOIA Branch further reviewed the RMS Records for personally identifiable information ("PII"), making one additional redaction.  On February 22, 2017, the FOIA Branch tasked TSA's Office of Legislative Affairs with searching for responsive records generated in response to Sen. Schumer's Letter.  TSA employees at JFK searched the Web Emergency Operations Center ("WebEOC"), TSA's incident monitoring database where TSA stores information about incidents during an airline passenger's travel through JFK, but no records were found pertaining to such travels on January 4, 2008, December 2, 2011, and March 23, 2012.  The Office of Legislative Affairs conducted a search of the Controlled Correspondence Management System ("CCMS"), where TSA maintains all records related to correspondence between the agency and members of Congress, for records pertaining to Sen. Schumer's Letter, locating a one-page letter dated October 17, 2008, from Jason M. Conley ("Conley"), Assistant Administrator for Legislative Affairs responding to Sen. Schumer's Letter ("Conley Letter").[9]

On March 9, 2017, the FOIA Branch produced to Kuzma the redacted RMS Records and the Conley Letter (together, "first set of responsive documents").[10]  In a transmittal letter accompanying the first set of responsive documents, FOIA Officer Regina McCoy ("McCoy") ("McCoy Letter"),[11] explained no records were located

---

[9] Bates TSA-039 (Dkt. 17 at 71).
[10] Defendant's Exh.F (Dkt. 17 at 32-73).
[11] Defendant's Exh. E (Dkt. 17 at 27-31).

pertaining to Plaintiff's interactions with TSA personnel at JFK on January 4, 2008, December 2, 2011, and March 23, 2012, that redactions were made to information identified as SSI and PII, and that TSA was not permitted to respond to Plaintiff's inquiry as to whether Plaintiff was on any Federal Watch List, including the No-Fly and Selectee Lists, because such "information was derived from classified and sensitive law enforcement and intelligence information."  McCoy Letter at 2 (Dkt. 17 at 29).  Plaintiff was also advised he could appeal the TSA's response within 90 days.  *Id.*  Plaintiff did not appeal the TSA's response but commenced the instant action on March 29, 2017.

In connection with this action, Defendant's Office of Chief Counsel coordinated with the FOIA Branch to review the FOIA Branch's original search for responsive records and determined TSRB's original search may not have located all correspondence between Plaintiff and TSA pertaining to Plaintiff's DHS TRIP redress inquiries.  Accordingly, the FOIA Branch directed TSRB to perform a supplemental search for responsive records, including searching the RMS and CCMA, locating an additional 52 pages of responsive records.  The newly located records were submitted to the SSI Program for identifying and redacting SSI and on August 27, 2018, the redacted 52 pages ("second set of responsive documents"),[12] were produced to Plaintiff.

## DISCUSSION

**1.    Summary Judgment**

---

[12] Defendant's Exh. I (Dkt. 17 at 101-53).

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party, *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), and summary judgment may not be granted based on a credibility assessment.  *See Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 55 (2d Cir. 2017) ("Adverse parties commonly advance conflicting versions of the events throughout a course of litigation. In such instances on summary judgment, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (citations, quotation marks, and brackets omitted)).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).  "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

"Summary judgment is the preferred procedural vehicle for resolving FOIA disputes."  *Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F.Supp.2d 262, 271 (S.D.N.Y. 2009).  In particular, the district court conducts a *de novo* review of an agency's response to a FOIA request including any government records which the agency claims are exempt from disclosing.  *See Lee v. F.D.I.C.*, 923 F.Supp. 451, 453

(S.D.N.Y. 1996) (citing 5 U.S.C. § 552(a)(4)(B); *Department of the Air Force v. Rose*, 425 U.S. 352, 361-62 (1976). Such "*de novo* review requires the court to reweigh the evidence compiled by the agency to determine whether the agency's findings are correct, not just whether they are reasonable." *Id.* at 453-54. Although FOIA authorizes *in camera* inspection of the documents in question, it is not required. *Id.* (citing 5 U.S.C. § 552(a)(4)(B)).

In the instant case, Defendant argues in support of summary judgment the Complaint has been rendered moot by the production of the first and second sets of responsive documents given that Plaintiff does not challenge the adequacy of Defendant's document search or any of the redactions. Defendant's Memorandum at 4-6. Alternatively, Defendant argues its evidence establishes the adequacy of Defendant's search for documents responsive to Plaintiff's FOIA request, *id.* at 6-9, and Defendant's redactions and withholdings of certain records were in accordance with the relevant FOIA Exemptions.[13] *Id.* at 10-16. In response, Plaintiff argues the redacted portions of the first and second sets of responsive documents must be released, Plaintiff's Memorandum at 3-4, and Defendant's search was inadequate. *Id.* at 4-5. Plaintiff also requests an award of litigation costs incurred in pursuing this action. *Id.* at 6. In further support of summary judgment, Defendant reasserts that its production of the first and second sets of responsive documents renders moot Plaintiff's Complaint which does not challenge the adequacy of the search or the redactions and that Plaintiff cannot raise such challenge for the first time in a memorandum of law responding to

---

[13] The categories of government records exempt from disclosure under FOIA are set forth in 5 U.S.C. § 552(b).

summary judgment, Defendant's Reply at 3-5, Defendant provided sufficient evidence

establishing its searches for responsive documents were reasonable, *id.* at 5-10,

Defendant did not withhold any documents in full, *id.* at 10-13, and Plaintiff is not

entitled to an award of costs.  *Id.* at 13-19.


**2.     FOIA Overview**

"The Freedom of Information Act adopts as its most basic premise a policy

strongly favoring public disclosure of information in the possession of federal agencies."

*Halpern v. F.B.I.*, 181 F.3d 279, 286 (2d Cir. 1999) (citing cases).  "As noted by the

Supreme Court, under FOIA, 'federal jurisdiction is dependent on a showing that an

agency has (1) 'improperly' (2) "withheld' (3) 'agency records.'"  *Grand Cent.*

*Partnership, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *United States*

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1980) (quoting *Kissinger v.*

*Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980))).  "Only when each

of these criteria is met may a district court 'force an agency to comply with the FOIA's

disclosure requirements.'"  *Id.*

"[T]he strong presumption in favor of disclosure places the burden on the agency

to justify the withholding of any requested documents."  *United States Dep't of State v.*

*Ray,* 502 U.S. 164, 173 (1991).  The agency has the initial burden to show it conducted

an adequate search for responsive records.  *Carney v. United States Dep't of Justice,*

19 F.3d 807, 812 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994).  A search is considered

adequate if it was reasonably calculated to uncover all relevant documents, yet

reasonableness does not demand perfection, and a reasonable search need not uncover every document extant. *Grand Cent. Partnership, Inc.,* 166 F.3d at 489.

"The FOIA requires that agency records be made available promptly upon a request that 'reasonably describes such records and . . . is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed.'" *Ruotolo v. Department of Justice, Tax Division*, 53 F.3d 4, 9 (2d Cir. 1995) (quoting 5 U.S.C. § 552(a)(3)). FOIA, however, exempts from disclosure nine categories of information. 5 U.S.C. § 552(b)(1) through (9). "Accordingly, to prevail on a summary judgment motion in a FOIA case, an agency must demonstrate 'that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.'" *Ruotolo*, 53 F.3d at 9 (quoting *Nat'l Cable Television Ass'n Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). Furthermore, "'to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate.'" *Id*. (quoting *Carney*, 19 F.3d at 812).

### A.    Mootness

Because the Complaint seeks the disclosure of "the requested records in their entireties," Complaint, Requested Relief ¶ 1, Defendant argues in support of summary judgment that Defendant, by providing Plaintiff with all documents responsive to Plaintiff's FOIA request, has rendered moot Plaintiff's claims warranting summary judgment in Defendant's favor given that Plaintiff does not challenge the adequacy of such response. Defendant's Memorandum at 4-6. In opposing summary judgment, Plaintiff challenges the adequacy of Defendant's FOIA responses and seeks disclosure

of the redacted portions of the first and second sets of responsive documents.  Plaintiff's Memorandum at 3-5.  In further support of summary judgment, Defendant maintains its provision of the second set of responsive documents moots the Complaint and deprives the court of jurisdiction over this action.  Defendant's Reply at 4-5.

As Defendant argues, Defendant's Memorandum at 4-6, the provision of all documents responsive to a FOIA request renders a FOIA claim moot.  *See Dixon v. Admin. Appeal Dep't Office of Info & Privacy*, 2008 WL 216304, at *4 (S.D.N.Y. Jan. 22, 2008) ("In FOIA cases, mootness occurs when requested documents have already been produced" (quoting *Doe v. Gonzales,* 449 F.3d 415, 420-21 (2d Cir.2006), and *Matter of Wade,* 969 F.2d 241, 248 (7th Cir.1992))), *aff'd*, 336 Fed.Appx. 98 (2d Cir. 2009).  *See also DiModica v. United States Dep't of Justice,* 2006 WL 89947, at *3-4 (S.D.N.Y. Jan. 11, 2006) (dismissing complaint as moot where Department of Justice produced documents responsive to FOIA request).  Nevertheless, a plain reading of the Complaint does not conclusively establish Plaintiff only seeks the production of the materials requested through FOIA and does not challenge the sufficiency of the documents Defendant provided in response to the FOIA request; rather, the Complaint states Plaintiff requests "Defendant to disclose the requested records *in their entireties* and make copies available to Plaintiff . . . ."  Complaint, Requested Relief ¶ 1 (italics added).  This wording could be reasonably construed as seeking full, unredacted documents in contrast to the redacted documents Defendant produced to Plaintiff 20 days before Plaintiff commenced this action as the first set of responsive documents, as well as the records contained in the second set of responsive documents produced after

Plaintiff commenced this action. Accordingly, Defendant's request for summary judgment should be DENIED with regard to this contention.

**B.    Challenges to FOIA Request Responses**

In support of summary judgment, Defendant describes in detail the search undertaken by TSA for records responsive to Plaintiff's FOIA request to establish the adequacy of the search, Defendant's Memorandum at 6-9, and all redactions to documents in the first and second sets of documents were made in accordance with specific FOIA exemptions. *Id.* at 10-16. Despite not specifically asserting the first and second sets of documents Defendant provided Plaintiff in response to his FOIA request were insufficient, Plaintiff argues in opposition to summary judgment that Defendant has not presented sufficient evidence establishing its search for records responsive to Plaintiff's FOIA request was reasonable, Plaintiff's Memorandum at 4-5, and that Defendant's withholding of some documents either in part or in full is unjustified. *Id.* at 3-4. In further support of summary judgment, Defendant recounts the steps taken in its search for records responsive to Plaintiff's FOIA requests to establish the adequacy of the search, Plaintiff's Reply at 5-10, asserts Defendant did not withhold any records in full, *id.* at 10-13, arguing that Plaintiff, by failing to challenge any of the redactions made in the first and second set of documents, has conceded the redactions were proper. *Id.* at 1-2 & n. 1. Plaintiff's arguments in opposition to summary judgment with regard to the adequacy of Defendant's search and document responses are without merit.

**1.    Adequacy of Search**

As to the adequacy of Defendant's search for documents responsive to Plaintiff's FOIA request, "[t]o secure summary judgment in a FOIA case, the defending agency must show through reasonably detailed affidavits or declarations that it conducted an adequate search and that any withheld documents fall within a FOIA exception." *Adamowicz v. I.R.S.*, 402 Fed.Appx. 648, 650 (2d Cir. 2010) (citing *Carney*, 19 F.3d at 812). *See Hodge v. F.B.I.*, 703 F.3d 575, 580 (D.C. Cir. 2013) ("In general, the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of [its] methods." (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003))). Such affidavits are accorded "'a presumption of good faith,'" *id.* (quoting *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009)), "which 'cannot be rebutted by purely speculative claims about the evidence and discoverability of other documents.'" *Id.* (quoting *Grand Cent. P'Ship, Inc.*, 166 F.3d at 489. Significantly, "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e);[14] there is no need for the agency to supply affidavits from each individual who participated in the actual search." *Carney*, 19 F.3d at 814. Nor does the fact that additional records responsive to a FOIA request are not located and produced until after the plaintiff commences a FOIA action render the initial search insufficient. *Hodge*, 703 F.3d at 580 ("it does not matter than an agency's *initial* search failed to uncover certain responsive documents so long as subsequent searches captured them" (italics in original)). Furthermore, "the law demands only a 'relatively

---

[14] The version of Fed.R.Civ.P. 56(e) in effect when *Carney* was decided provided that where affidavits made on personal knowledge setting forth "such facts as would be admissible in evidence" are submitted in support of summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading" but must provide affidavits setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (1994).

detailed and nonconclusory' affidavit or declaration." *Adamowicz*, 402 Fed.Appx. at 650-51 (quoting *Grand Cent. P'Ship, Inc.*, 166 F.3d at 488-89).  Here, this standard is satisfied by the affidavit provided by Defendants of TSA FOIA Officer Teri M. Miller ("Miller Declaration"), who avers she is "responsible for overseeing the processing of all requests made to TSA under FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, for initiating searches for records relevant to such requests; and for supervising the determination of what records or portions thereof should be disclosed and which should be withheld in part or in full."  Miller Declaration ¶ 1.  Miller further avers that in her capacity as TSA's FOIA Officer, she is familiar with TSA's obligation under FOIA and the Privacy Act, conducting reasonable and thorough searches for information and records responsive to various FOIA requests, as well as reviewing such information and records to identify and redact SSI and other information exempt from disclosure under FOIA, and it is on this personal knowledge and information that Miller's Declaration is based.  *Id.* ¶¶ 2-3.

In particular, Miller explains that upon initially receiving Plaintiff's FOIA request seeking all documents pertaining to Plaintiff, TSA's FOIA Branch acknowledged receipt of the FOIA request, yet determined the request "was unperfected because it was too broad in scope and did not identify with particularity the records sought, " and requested Plaintiff provide "a reasonable description of the records you [Plaintiff] are seeking." Miller Declaration ¶¶ 7-8 (quoting November 17, 2016 Letter).  Plaintiff was given further instructions regarding the detail required to enable FOIA Branch personnel to locate information and records responsive to Plaintiff's FOIA request advising Plaintiff's failure to comply with the request would delay TSA's FOIA Branch's response to the request.

*Id.* ¶ 8.  The letter from Plaintiff's then-attorney, Kuzma, providing the requested detail

was received by TSA on December 16, 2016, and forwarded to the FOIA Branch on

December 27, 2016.  *Id.* ¶ 9.  On December 28, 2016, the FOIA Branch determined the

additional details Kuzma provided were sufficient to perfect Plaintiff's FOIA request,

sent Kuzma a letter acknowledging as much, *id.* ¶ 10, and directed TSA's operations at

JFK and TSA's TSRB to search for responsive records. *Id.* ¶ 12.  In furtherance of the

search, JFK employees searched the WebEOC Incident Monitor database, which is the

TSA's information system where information is maintained about incidents during airline

passengers' transit through JFK, including injuries, possible regulatory violations,

screening errors, referrals for additional screenings, suspicious activity regarding

attention from TSA management or law enforcement, and calls to law enforcement

officers for assistance, but no records pertaining to the dates Plaintiff specified,

including January 4, 2008, December 2, 2011, and March 23, 2014, were found.  *Id.* ¶

13.  The Office of Legislative Affairs employees were directed to search the Controlled

Correspondence Management System ("CCSM"), a TSA information system where

records related to correspondence between TSA and members of Congress are

maintained, locating Conley's October 17, 2008 letter responding to Sen. Schumer.  *Id.*

¶ 14.  TSRB employees searched the Redress Management System ("RMS"), were

information regarding redress inquiries is maintained, locating 40 pages of responsive

records regarding RCN 2042441 and Traveler Inquiring Form dated February 29, 2012.

*Id.* ¶ 15.  The records were provided to the FOIA Branch which forwarded the records to

the TSA SSI Program for review and redaction of SSI.  *Id.* ¶ 15.  After making such

redactions, the FOIA Branch reviewed the documents for PII which was then redacted.

*Id.* ¶ 16.  On March 9, 2017, this first set of responsive documents, with SSI and PII

redacted, was sent to Kuzma, *id.* ¶ 17, accompanied by a transmittal letter explaining

that insofar as Plaintiff also requested TSA search for information pertaining to Plaintiff's

inclusion on the No Fly and Selectee Lists in the TSIS records system, TSA could

"neither confirm nor deny whether an individual is on a Federal Watch List, because this

information is derived from classified and sensitive law enforcement and intelligence

information."  *Id.* ¶ 27 (quoting March 9, 2017 Letter).

After Plaintiff filed the Complaint on March 29, 2017 commencing the instant

action, TSA's Office of Legal Counsel and FOIA Branch, in accordance with this court's

January 4, 2018 scheduling order, coordinated a review of TSA's original search for

responsive records and determined TSRB did not locate all records responsive to

Plaintiff's FOIA request including correspondence between Plaintiff and TSA related to

Plaintiff's DHS TRIP redress inquiries.  Miller Affidavit ¶ 29.  TSRB then again searched

the RMS and the CCMS for any official DHS correspondence, locating 52 additional

pages of records responsive to Plaintiff's FOIA request.  *Id.* ¶ 30.  The newly located

records were submitted to the SSI Program for identification and redaction of SSI, *id.* ¶

31, and this second set of responsive documents was then produced directly to Plaintiff

who was no longer represented by Kuzma, but proceeding *pro se.  Id.* ¶ 33.

These details provided by Miller in her declaration, based on her personal

knowledge and experience working as TSA's FOIA Officer, *Carney*, 19 F.3d at 814

(FOIA response requires affidavit from agency employee responsible for FOIA

requests), and which is both unrebutted and entitled to a presumption of good faith,

*Wilner*, 592 F.3d 69 (properly made and unrebutted affidavit responding to FOIA

request entitled to good faith presumption), sufficiently describe a reasonable and thorough search of all databases relevant to Plaintiff's FOIA request, *Grand Cent. P'Ship, Inc.*, 166 F.3d at 488-89 ("the law demands only a 'relatively detailed and nonconclusory' affidavit or declaration"), and Plaintiff does not argue otherwise as is his burden.  *See Hodge*, 703 F.3d at 580 (rejecting FOIA plaintiff's challenge to adequacy of agency's search for records responsive to FOIA request where Plaintiff failed to identify additional searches agency should have conducted and offered no basis for concluding additional documents might exist).  Nor does TSA's production of the second set of responsive documents after Plaintiff commenced this action establish the initial search was insufficient.  *Id.* (it is irrelevant "that an agency's *initial* search failed to uncover certain responsive documents so long as subsequent searches captured them." (italics in original)). Accordingly, the undisputed record establishes Plaintiffs performed a reasonable search for information, documents and records responsive to Plaintiff's FOIA request.

## 2. Non-exempt Portions of Withheld Materials

With regard to the materials TSA located in response to Plaintiff's FOIA request that were either withheld or redacted, Defendant maintains all withheld or redacted materials were pursuant to enumerated FOIA exemptions.  Defendant's Memorandum at 10-16.  In opposition to summary judgment, Plaintiff argues Defendant must release non-exempt portions of any document that was withheld in full.  Plaintiff's Memorandum at 3-4.  In further support of summary judgment, Defendant clarifies that no documents were withheld in their entirety, but only some portions of documents identified as falling within a specific FOIA exemption were redacted, and that Defendant has submitted

*Vaughn* indices documenting the redactions and the respectively asserted exemptions. Defendant's Reply at 10-11.  Defendant further explains that in response to Plaintiff's request for documents pertaining to Plaintiff's speculated inclusion on No-Fly and Selectee Lists, even if records responsive to such requests were located, the documents, in their entirety, could not be revealed to Plaintiff because the mere acknowledgment that such information exists could cause harm recognizable as exempt under FOIA.  *Id.* at 11-13.  Plaintiff's argument is without merit.

### a.    Redactions

Preliminarily, the court addresses Defendant's assertion, Defendant's Reply at 1, n. 1, that Plaintiff, by failing to contest any of the redactions made to the records contained in the first and second sets of documents and documented by Defendant in the *Vaughn* index, has effectively conceded such redactions were proper.  Plaintiff's *pro se* status, however, prevents the court from considering Plaintiff as having conceded that such redactions were proper under FOIA's enumerated exemptions.  S*ee Jackson v. Federal Express*, 766 F.3d 189, 197-98 (2d Cir. 2014) (when a *pro se* party only partly opposes a motion for summary judgment, "the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate.").  Nevertheless, given that Plaintiff does not challenge the adequacy of the *Vaughn* indices, either in the Complaint or in his motion papers, and Defendant discusses the *Vaughn* indices only in the interest of completeness, Defendant's Memorandum at 4-5, the court addresses only whether Defendant's *Vaughn* indices are sufficient.

In satisfying its burden on summary judgment, the defendant agency may rely on a *Vaughn* index consisting of "'affidavits to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption.'" *Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279, 291 (2d Cir. 1999) (quoting *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 481 (D.C. Cir. 1980)). The *Vaughn* index has three functions:

> "(1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, (3) and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court."

*Id.* (quoting *Keys v. United States Dep't of Justice*, 830 F.3d 337, 349 (D.C. Cir. 1987)). Further, "reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden" under FOIA and are accorded a presumption of good faith. *Carney*, 19 F.3d at 812 (citing cases). A plain review of the *Vaughn* indices Defendant submitted in the instant case establishes their adequacy under FOIA. Defendant's first *Vaughn* index ("First *Vaughn* Index")[15] lists 54 redactions from the first set of documents,[16] 53 pursuant to 5 U.S.C. § 552(b)(3) ("FOIA Exemption 3"), and one pursuant to 5 U.S.C. § 552(b)(6) ("FOIA Exemption 6"). Defendant's second Vaughn index ("Second Vaughn Index")[17] lists 37 redactions from the second set of documents,[18] 32 pursuant to FOIA Exemption 3 and five pursuant to FOIA Exemption 6.

---

[15] Defendant's Exh. G (Dkt. 17 at 74-95).
[16] Defendant's Ehx. F (Dkt. 17 at 32-73).
[17] Defendant's Exh. J (Dkt. 17 at 154-61).
[18] Defendant's Exh. I (Dkt. 17 at 102-53).

FOIA Exemption 3 protects records "specifically exempted from disclosure by statute" provided the relevant statute either requires the material be withheld in a manner leaving the agency with no discretion on the issue or establishes particular criteria for withholding material. 5 U.S.C. § 552(b)(3).  A careful review of the 85 redactions Defendant, in the first and second sets of responsive documents, attributes to FOIA Exemption 3 establishes each such redaction is predicated on 49 U.S.C. § 114(r) ("§ 114(r)"), 49 C.F.R. § 1520.5(b)(9)(ii) ("§ 1520.5(b)(9)(ii)"), and 49 C.F.R. § 1520.15(a) ("§ 1520.15(a)").  As relevant § 114(r) provides that notwithstanding FOIA, the TSA Administrator "shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security" under the TSA "if the Administrator decides that disclosing the information would * * * be detrimental to the security of transportation."  49 U.S.C. § 114(r).  Accordingly, under § 114(r), TSA promulgated implementing regulations including, *inter alia*, § 1520.5(b)(9)(ii) prohibiting disclosure of SSI pertaining to security screening under Federal aviation transportation security requirements, and § 1520.15(a) providing notwithstanding FOIA, "records containing SSI are not available for public inspection or copying, nor does TSA . . . release such records to persons without a need to know."  As relevant to the instant case, the *Vaughn* indices establish that the redacted material is desigamenated under § 1520.5(b)(9)(ii) as SSI.  *See*, *e.g.*, First Vaughn Index entry 5 (Dkt. 17 at 79) (describing information redacted from a DHS TRIP Redress Management System Record as "Name of the DHS TRIP analyst or analyst working for another DHS component or other federal agency who entered the note regarding analysis of the redress inquiry" and explaining the information cannot be disclosed because

"[i]dentifying the analyst name would potentially enable identification of which components and/or agencies were involved in the analysis, which could indicate whether the individual making the redress inquiry was or was not a match to an identity on a federal government watch list" and thus is exempt from disclosure pursuant to § 114(r), and §§ 1520.5(b)(9)(ii) and 1520.15(a)). These findings are consistent with the averments of TSA SSI Chief Douglas E. Blair ("Blair"), who describes reviewing all the records located in searches responsive to Plaintiff's FOIA request for information that, pursuant to 49 C.F.R. §§ 1520.5(b)(9)(ii) and 1520.15(a), was required to be redacted. Blair Declaration ¶¶ 1, 9-10. As stated, Plaintiff challenges neither the redactions nor the explanations set forth in the *Vaughn* indices for the SSI redactions.

Six other redactions are pursuant to FOIA Exemption 6 which protects from disclosure PII including "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). A plain review of the six redactions Defendant attributes to FOIA Exemption 6 demonstrates such redactions constitute PII. *See*, *e.g.*, First Vaughn Index entry 9 (Dkt. 17 at 85) (describing that on March 2, 2012 e-mail from redress applicant to DHS TRIP the redress applicant's brother's telephone number was redacted pursuant to 5 U.S.C. § 552(b)(6) because "disclosure of the telephone number would be an unwarranted invasion of personal privacy because the applicant's brother's privacy interest outweighs the public's de minimis interest in disclosure."). Such redactions, as described in the *Vaughn* indices, are consistent with the averments of FOIA Officer Miller who explains that after records responsive to Plaintiff's FOIA request were located and submitted to the SSI Program for review and identification of SSI, the records were

sent to the FOIA Branch for identification and redaction of PII pursuant to 5 U.S.C. § 552(b)(6).  Miller Declaration ¶¶ 1, 15-16.  Again, Plaintiff has not challenged the redactions nor any explanations in the *Vaughn* indices for the PII redactions.

Defendant thus has provided *Vaughn* indices adequately describing the redactions made to records located in searches responsive to Plaintiff's FOIA request, and Plaintiff does not argue otherwise.  Accordingly, summary judgment should be GRANTED in favor of Defendant as to the redactions made to the responsive documents.

### b.    *Glomar* Response

Plaintiff argues with regard to any documents withheld in full that Defendant was required to describe what proportion of the information in such documents is not exempt as well as how the non-exempt material is dispersed throughout the document such that the non-exempt material is inextricably entertwined with the exempt portions and segregation of the pages withheld in full is not possible.  Plaintiff's Memorandum at 3-4. In reply Defendant reiterates that no pages were withheld in full, rendering Plaintiff's argument on that basis moot, but further explaining that insofar as Plaintiff seeks production of documents withheld in their entirety that pertained to Plaintiff's inclusion on No-Fly and Selectee Lists, Defendant is prohibited by law from revealing whether any such documents even exist.  Defendant's Reply at 10-13.  As Defendant explains, Defendant's Reply at 10-11, whether or not Defendant located information pertaining to Plaintiff's inclusion on TSA's No-Fly and Selectee Lists and TSIS system of records is a fact that is exempt from disclosure under FOIA.  In responding to such requests,

Defendant's answer was limited to asserting Defendant was unable to confirm or deny whether such records exist, referred to as a "*Glomar* response." *Id.* at 11-12.

"The *Glomar* doctrine originated in a FOIA case concerning records pertaining to the Hughes Glomar Explorer, an oceanic research vessel." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 67 (2d Cir. 2009) (citing *Phillippi v. CIA,* 546 F.2d 1009 (D.C.Cir.1976)). In *Phillippi,* the Central Intelligence Agency ("CIA"), believing that the "existence or nonexistence of the requested records was itself a classified fact exempt from disclosure under ... FOIA," responded to a FOIA request that "in the interest of national security, involvement by the U.S. government in the activities which are the subject matter of [plaintiff's] request can neither be confirmed nor denied." *Phillipi*, 546 F.2d at 1012. The principle "that an agency may, pursuant to FOIA's statutory exemptions, refuse to confirm or deny the existence of certain records in response to a FOIA request—has since become known as the *Glomar* doctrine." *Wilner*, 592 F.3d at 67. In the instant case, Defendant's response that it can neither confirm nor deny whether records exist pertaining to Plaintiff' inclusion on TSA's No-Fly and Selectee Lists and TSIS system of records was a proper *Glomar* response.

In particular, the Second Circuit has held "as a general rule, (1) an agency may provide a *Glomar* response to FOIA requests for information gathered under a program whose existence has been publicly revealed, and may do so specifically with respect to information gathered under the TSP, and (2) that such a response will be reviewed in the same manner as any other *Glomar* response to a FOIA request." *Wilner*, 592 F.3d at 69. The so-called "*Glomar* doctrine" applies "in cases in which the existence or nonexistence of a record is a fact exempt from disclosure under a FOIA exception." *Id.*

592 F.3d at 70.  If, however, the existence or nonexistence of the specific records

sought by the FOIA request has been the subject of an official public acknowledgment,

*i.e.*, the government has admitted that a specific record exists, then the government

agency is precluded from later making a *Glomar* response regarding whether that same

record exists or not.  *Id.* (citing *Wolf v. CIA,* 473 F.3d 370, 378–79 (D.C. Cir. 2007), and

*Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy,* 891 F.2d 414, 421 (2d Cir.

1989)).  Further, "to invoke the *Glomar* response to a FOIA request, an agency must

'tether' its refusal to one of the nine FOIA exemptions."  *Id.*, 592 F.3d at 71.  "In other

words, 'a government agency may ... refuse to confirm or deny the existence of certain

records ... if the FOIA exemption would itself preclude the acknowledgment of such

documents.'"  *Id.* (quoting *Minier v. Central Intelligence Agency,* 88 F.3d 796, 800 (9th

Cir. 1996)).

In the instant case, Defendant TSA "tethered" its *Glomar* response pertaining to

Plaintiff's inclusion on the No-Fly and Selectee Lists pursuant to FOIA Exemption 3,

because to reveal the existence of such information would disclose Plaintiff's status with

respect to the No-Fly and Selectee Lists which information is protected as SSI.  Conley

Letter at 2 (Dkt. 17 at 29).  Conley specifically wrote

> to the extent your request relates to records maintained by TSA, TSA can neither
> confirm nor deny whether an individual is on a Federal Watch List, because this
> information is derived from classified and sensitive law enforcement and
> intelligence information.  This protects the operational counterterrorism and
> intelligence collection objectives of the Federal government, as well as the
> personal safety of those involved in counterterrorism investigations.  Federal
> Watch Lists remain effective tools in the government's counterterrorism and
> transportation security efforts because their contents are not disclosed.

Conley Letter at 2 (Dkt. 17 at 29).

Significantly, the provision of a *Glomar* response under these circumstances has repeatedly been upheld. *See*, *e.g.*, *Davis v. U.S. Dep't of Homeland Security*, 2013 WL 3288418, at * 11 (E.D.N.Y. June 27, 2013) (citing cases concluding information pertaining to No-Fly and Selectee Lists under § 114(r) was properly withheld pursuant to FOIA Exemption 3). Nor does Plaintiff argue "the existence or nonexistence of specific records sought by the FOIA request has been the subject of an official public acknowledgment" precluding the *Glomar* response. *Wilner*, 592 F.3d at 70. Accordingly, insofar as Plaintiff challenges Defendant's *Glomar* response, Defendant's motion for summary judgment should be GRANTED.

## C. Costs

In the Complaint, filed *pro se*, Plaintiff seeks an award of costs and attorney fees incurred in this action. Complaint, Requested Relief ¶ 3. In seeking summary judgment, Plaintiff renews this request arguing that although he continues to proceed *pro se*, § 552(a)(4)(E)(ii)(II) permits Plaintiff to recover his litigation costs. Plaintiff's Memorandum at 6. Plaintiff further maintains the fact Defendant did not produce the second set of responsive documents until after Plaintiff commenced the instant action establishes the action was necessary to obtain the documents. *Id.* In opposing Plaintiff's request for an award of litigation costs, Defendant argues the request is premature until the court has resolved the pending cross-motions for summary judgment, Defendant's Reply at 13, the so-called "catalyst theory" whereby the second set of responsive documents was produced only in response to the commencement of this action does not apply because Plaintiff failed to exhaust administrative remedies when, rather than filing an administrative appeal upon receiving the first set of

responsive documents, Plaintiff commenced this action, *id.* at 14-15, and even if Plaintiff is considered eligible for an award of costs, Plaintiff has failed to demonstrate the criteria for such an award are satisfied. *Id.* at 16-19. Plaintiff has not argued in further support of his request for an award of costs.

Pursuant to 5 U.S.C. § 552(a)(4)(E), "a court is authorized to assess attorney's fees and litigation costs against the government under a finding that the complainant has substantially prevailed." *Steenland v. Central Intelligence Agency*, 555 F.Supp. 907, 908 (W.D.N.Y. 1983). In the instant case, as Defendant argues, Defendant's Reply at 15, Plaintiff's request for an award of costs is premature pending resolution of the cross motions for summary judgment. Moreover, Plaintiff's request for an award of litigation costs is also premature given Plaintiff's failure to exhaust administrative remedies.

In particular, although in the FOIA context administrative exhaustion is merely a prudential consideration, *see Wilbur v. C.I.A.,* 355 F.3d 675, 677 (D.C.Cir.2004) ("exhaustion is a prudential consideration, rather than a jurisdictional prerequisite"), under FOIA, "[e]xhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C.Cir. 1990) (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)). The purpose of FOIA's exhaustion scheme is to allow an agency from which information has been requested to correct any mistakes in responding to a FOIA request, thereby obviating unnecessary judicial review. *Id.* Congress "did not mean for the court to take over the agency's decisionmaking role in midstream or to

interrupt the agency's appeal process when the agency has already invested time, resources, and expertise into the effort of responding," and permitting a FOIA requester to proceed to court prior to exhausting administrative remedies "would cut off the agency's power to correct or rethink initial misjudgments or errors." *Oglesby*, 920 F.2d at 64.

Although "absent a statutory provision to the contrary, failure to exhaust is by no means an automatic bar to judicial review; courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing," *id.*, as both the "'purposes of exhaustion'" and the "'particular administrative scheme'" support barring the commencement of an action pursuant to FOIA until the administrative appeals process has been exhausted. *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C.Cir. 2003) (citing and quoting *Oglesby*, 920 F.2d at 61). FOIA's statutory scheme provides for an administrative appeal process following an agency's denial, in whole or in part, of a FOIA request. 5 U.S.C. § 552(a)(6)(A)(i) & (ii). "Courts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts." *Oglesby*, 920 F.2d 57, 61-62 (citing cases). Further, the mere fact that Defendant released the second set of responsive documents does not establish the filing of the Complaint substantially caused the release of such documents. *See Hodge*, 703 F.3d at 580 ("it does not matter than an agency's *initial* search failed to uncover certain responsive documents so long as subsequent searches captured them" (italics in original)); *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C.Cir. 1984) ("the mere filing of the complaint and the subsequent release of documents is

insufficient to establish causation").  Significantly, Plaintiff does not argue, much less point to any evidence supporting that Plaintiff would not have received the second set of responsive documents absent filing the instant complaint rather than merely filing as administrative appeal after Defendant released the first set of responsive documents. Accordingly, Plaintiff's request for an award of costs should be DENIED as without merit, and the court thus does not reach Defendant's alternative argument, Defendant's Reply at 16-19, that Plaintiff cannot show he is entitled to an award of litigation costs under the four relevant criteria.

## **CONCLUSION**

Based on the foregoing, Defendant's Motion (Dkt. 13) should be DENIED in part and GRANTED in part; Plaintiff's Motion (Dkt. 22) should be DENIED.  The Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        June 18th, 2020
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      June 18th, 2020
            Buffalo, New York